# SUPREME COURT

OF

# ILLINOIS.

---

## THIRD GRAND DIVISION.

### APRIL TERM, 1867.

---

DANIEL B. HEARTRUNFT *et al.*, by their next friend, etc.,

*v.*

HAMILTON C. DANIELS and ALLEN C. YUNDT.

1. WITNESS — *interested in event of suit — incompetent.* When a person having trust property in his hands misapplies any portion of it, he is liable to account for such misappropriation, and to that extent is interested in defeating the trust, and such trustee is incompetent as a witness, by whom to show the purposes for which the trust was created.

2. EVIDENCE — *when will be presumed as having been admitted.* Where it was asked to have certain evidence, which was incompetent, excluded, and the court reserved the question until all the evidence was heard, and then rendered a decree dismissing the bill, without formally excluding it, it will be presumed, that such evidence was considered by the court, in rendering the decree, unless it appears in the decree that it was not.

APPEAL from the Circuit Court of Du Page county; the Hon. ISAAC G. WILSON, Judge, presiding.

24 — 43D ILL.

This was a suit in chancery, instituted in the court below by the appellants, Daniel B., Mary E. and Armeda Heartrunft, by their next friend, Levi Heartrunft, against the appellees, Hamilton C. Daniels and Allen C. Yundt, to compel the execution of an alleged trust.

The bill alleges, that the defendant, Yundt, placed in the hands of his co-defendant, Daniels, a certain promissory note, executed by Martin and David Brown, for the sum of $300, to be held in trust for the benefit of appellants. That said Daniels refuses to execute the said trust, and pretends, together with the said Yundt, that the same is not subject to said trust, but belongs wholly to the said Yundt. The only question presented by the record is, whether Daniels, the trustee, has such an interest in the trust fund as to render him incompetent as a witness in these proceedings. The further facts in this case are fully stated in the opinion.

Messrs. HURD, BOOTH & KREAMER, for the appellants.

Messrs. VALLETTE & CODY, for the appellees.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

It is first insisted, that appellee Daniels was interested in the event of the suit, and was therefore incompetent as a witness. It appears from the evidence that Abraham Heartrunft went to California in June, 1862, and remained there till June, 1864. That he left his wife and his children at Napierville, and in his absence his wife was seduced, and, having had an abortion, was not expected to live but a very short time, and public rumor having charged appellee Yundt with having seduced Mrs. Heartrunft, and of having produced the abortion, in anticipation of her speedy dissolution, Jacob Becker went to Yundt and charged him with being the cause of the trouble and of her sickness. And he swears that Yundt proposed a settlement of the matter, and that he insisted upon having ten thousand dollars put up for the support of the children of Heartrunft, but Yundt refused to give it, but said he was willing to do

what was right.   That Yundt then asked appellee Daniels to figure up what it would cost to support the children until they were of age; that Yundt said he had a note on Brown for $3,000; that he would put it in Daniels' hands to hold, as it was not then due.

That Yundt said, that if Mrs. Heartrunft died, witness would pay all expenses, and he would meet him a week from that time and refund them.   Yundt placed the note in Daniels' hands.   That the note was put into his hands to support the complainants and to secure the payment of the funeral expenses of Mrs. Heartrunft.   That Mrs. Heartrunft died about the 1st of May, 1864, which was the next day after the arrangement was made, but Yundt did not pay the expenses.

Appellee Daniels swore, that the note was placed in his hands, to secure the payment of funeral expenses in case Mrs. Heartrunft should die, and that Yundt would return in a week for that purpose.   That he had, through Cody, collected the first installment of interest, which Cody had let Yundt have; that it amounted to $180; that subsequently the note was paid and Yundt placed in his hands United States bonds equal in amount to the note and interest, except the interest paid to him by Cody.   Appellants moved to exclude this evidence, on the ground that Daniels was interested, but the court reserved the question until all of the evidence was heard, and rendered a decree dismissing the bill, without formally excluding Daniels' evidence from consideration in rendering the decree.

Independent of Daniels' evidence, it is clear, that the note was placed in his hands for the purpose of supporting appellants, and to pay the expenses incurred in the burial of their mother if she should die.   Of this there is no question.   And inasmuch as Daniels had appropriated a portion of the fund to another and different purpose, he was directly interested to the extent of $180, in defeating a recovery.   As the law then stood, he was incompetent to give evidence, and it should not have been taken into consideration in deciding the case.   While it was not necessary to exclude it formally, the chancellor should not have regarded it, but should have decided the case precisely

as though he had not testified. And from the decree, we must conclude that it was considered, and not only so, but that it controled the decision. Had all of the trust fund been still in his hands it might perhaps have been different. But being trust property, if he had misapplied any portion of it, he would be liable to account, and having paid a portion of the fund to Yundt, he had an interest to that extent in defeating the trust. Excluding his evidence, it is clear the note was placed in his hands to be held in trust for the children, and it would follow, that he paid the interest to Yundt wrongfully, and was therefore interested and not competent to testify. The decree of the court below must be reversed and the cause remanded.

*Decree reversed.*